NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT L. BEAVIS, EUGENE R. BISCAILUZ, ALAN G. CHESTERMAN, JOAN DONOHUE, ON BEHALF OF TODD DONOHUE, ALLEN V. HARINCK, RANDOLPH K. HINZ, JR., GERALD J. INNELLA, KENNETH N. OLSON, DAVID E. OTT, JOSHUA S. RABINOWITZ, JEROME J. SCHUCK, JAMES W. SCHULTZ, JR.,WILLIAM A. TAYLOR, GAETAN A. PASSANNANTE, RICHARD KAAPUNI, GARY W. DAVIS, THOMAS F. SPAYD, WILLIAM J. ROGALSKI, DIANA RAYMOND,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-2222

---

Appeal from the United States Court of Federal Claims in No. 1:09-cv-33307-TMD, Judge Thompson M. Dietz.

---

Decided:  October 23, 2025

---

ROBERT L. BEAVIS, Juno Beach, FL, pro se.

EUGENE R. BISCAILUZ, West Hills, CA, pro se.

ALAN G. CHESTERMAN, Orinda, CA, pro se.

JOAN DONOHUE, Sparta, NJ, pro se.

ALLEN V. HARINCK, Highlands, CO, pro se.

RANDOLPH K. HINZ, JR., Petaluma, CA, pro se.

GERALD J. INNELLA, Pittstown, NJ, pro se.

KENNETH N. OLSON, Dover, NH, pro se.

DAVID E. OTT, Incline Village, NV, pro se.

JOSHUA S. RABINOWITZ, Goodyear, AZ, pro se.

JEROME J. SCHUCK, Carlsbad, CA, pro se.

JAMES W. SCHULTZ, JR., Dover, DE, pro se.

WILLIAM A. TAYLOR, Napa, CA, pro se.

GAETAN A. PASSANNANTE, Boring, OR, pro se.

RICHARD KAAPUNI, Honolulu, HI, pro se.

GARY W. DAVIS, Sonoma, CA, pro se.

THOMAS F. SPAYD, Florence, OR, pro se.

WILLIAM J. ROGALSKI, Meadow Vista, CA, pro se.

DIANA RAYMOND, Scottsdale, AZ, pro se.

JANET A. BRADLEY, Tax Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRUCE R. ELLISEN, DAVID A. HUBBERT.

————————————

Before LOURIE, BRYSON, and CHEN, *Circuit Judges*.

BRYSON, *Circuit Judge*.

This tax refund case is a companion to *Biestek v. United States*, No. 2023-1467, decided today. The cases are factually similar in some respects and raise some similar issues. The most significant difference between the two cases is that while the plaintiffs in the *Biestek* case failed to file timely refund claims or failed to file a timely complaint in the Court of Federal Claims ("the Claims Court"), each of the plaintiffs in this case (with one exception) filed timely refund claims with the Internal Revenue Service ("IRS") and filed timely complaints with the Claims Court.

I

This litigation was initiated by a number of retired United Airlines pilots who have sought refunds of Federal Insurance Contribution Act ("FICA") taxes. The taxes were paid at the time each of the pilots retired and began receiving retirement benefits under United's nonqualified deferred compensation plan. Pursuant to the special timing rule of 26 U.S.C. § 3121(v)(2), the tax for each pilot was paid in a lump sum when each pilot began receiving benefits under the plan. The amount of the tax paid for each pilot was based on the calculated present value of each pilot's benefits package.

After the pilots retired, United entered bankruptcy. At the conclusion of the bankruptcy proceedings, the pilots' deferred compensation plan was terminated, and the pilots stopped receiving benefits under the plan.

Because the plan was terminated, the total amount that each pilot actually received in benefits under the plan was less than the value of the expected benefits at the time each pilot retired. For that reason, the amount each pilot paid in FICA taxes was greater than each would have paid if the FICA tax had been paid only on benefits actually received.

The pilots individually sought refunds of what they characterized as overpayments of the FICA taxes from the IRS. When those refund claims were denied, the pilots sought relief in the Claims Court. The Claims Court dismissed all of their claims. The plaintiffs, all of whom are proceeding pro se, have appealed to this court. We affirm.

## II

This litigation began in 2009 when William Koopmann, one of the retired United pilots, filed a pro se complaint in the Claims Court seeking a refund of the FICA taxes that had been withheld by United based on the value of his expected benefits under the retirement plan. Mr. Koopmann named more than 160 retired pilots in addition to himself in the complaint. To manage the litigation, the Claims Court required each of the pilots to file individual short form complaints, then severed the complaints into nine separate groups based on their common characteristics.

Nineteen of the pilots were grouped together as members of what is referred to as the "*Beavis* group." The FICA taxes for those pilots were paid at the time each of the pilots retired and began receiving retirement benefits under United's nonqualified deferred compensation plan.[1]

---

[1]    The appellants object to the use of the term "plan" to refer to the nonqualified deferred compensation arrangement established by United Airlines, on the ground

The pilots individually sought refunds of what they characterized as overpayments of the FICA taxes. When those refund claims were denied, the pilots sought relief in the Claims Court. The government moved to dismiss all the plaintiffs' claims, and the court did so. The court dismissed the complaints of all of the plaintiffs except Eugene R. Biscailuz for failure to state a claim upon which relief can be granted. *Beavis v. United States*, No. 09-33307, 2023 WL 4683543 (Fed. Cl. July 20, 2023). The court dismissed Mr. Biscailuz's complaint for lack of jurisdiction on the ground that he failed to file a timely refund claim with the Secretary of the Treasury. *Beavis v. United States*, No. 09-33307, 2023 WL 4675898 (Fed. Cl. July 20, 2023).

A

The Claims Court based its order dismissing the complaints of the 18 plaintiffs other than Mr. Biscailuz on the ground that they were not entitled to refunds of the FICA taxes that United Airlines had paid on their behalf. *Beavis*, 2023 WL 4683543. The court first rejected their claim that section 3121(v)(2) is unconstitutional because it authorizes the government to collect taxes on income before that income is realized. On that issue, the court ruled that the FICA tax is not an income tax, but an excise tax, and that there was no constitutional or other barrier to Congress's decision, in the circumstances covered by section 3121(v)(2), to require that the FICA tax be

---

that because the arrangement was not qualified for preferred tax status under the Employee Retirement Income Security Act of 1974, it amounted to simply a debt obligation of United. Appellants' Br. 4–6. The use of the term "plan" is entirely innocuous, however. In the context of retirement programs, it simply denotes the particular arrangement that is established to provide retirement benefits, whatever form that arrangement might take.

paid in a single lump sum when the beneficiaries of the plan first begin receiving their benefits. *Beavis*, 2023 WL 4683543, at *4–5.

The Claims Court also rejected the plaintiffs' claim that the government's failure to return the taxes paid on income that was never received constituted actionable unjust enrichment. The court held that the theory of unjust enrichment was an equitable implied-in-law contract claim that was not within the waiver of sovereign immunity effected by the Tucker Act. *Beavis*, 2023 WL 4683543, at *6.

Finally, the Claims Court rejected the plaintiffs' argument that because the IRS Chief Counsel published advice on the legal issues surrounding the pilots' claims while those claims were pending, their claims were not independently reviewed by the IRS appeals officers. The court explained that because it reviews tax refund claims *de novo*, any effect of the IRS Chief Counsel's advice on the decisions by the IRS appeals officers would be irrelevant. *Beavis*, 2023 WL 4683543, at *6.

B

The Claims Court separately dismissed the complaint of plaintiff Biscailuz on jurisdictional grounds because, unlike the other plaintiffs in the *Beavis* group, Mr. Biscailuz did not file a timely refund claim with the IRS. The court noted that under sections 7422(a) and 6511(a) of title 26, a party seeking a tax refund must file an administrative claim with the IRS either within three years from the time the return is filed or two years from the time the tax is paid, whichever period expires later. Because Mr. Biscailuz retired in 2002, those periods expired, at the latest, in 2006. It is undisputed that Mr. Biscailuz did not file his refund claim until 2007. Based on prior precedents, the court held that a timely filed administrative claim for a refund was a jurisdictional requirement, and that Mr. Biscailuz's failure to file a

refund claim within the later of the two- or three-year limitations periods in section 6511(a) required that his complaint be dismissed for lack of jurisdiction. *Beavis*, 2023 WL 4675898, at \*1.

## III

### A

Mr. Biscailuz has not filed a brief in this case, but even though he was joined as an appellant in this case, he asked to join the brief filed by appellant Henderson in the companion case, *Biestek v. United States*, No. 23-1467. Thus, even though Mr. Biscailuz is named in this appeal, he has elected to associate himself with the appeal in case No. 23-1467, and this court has allowed him to do so. *See* case No. 23-2222, ECF 54. His appeal is therefore governed by the outcome of the appeal in case No. 23-1467, and he is bound by the analysis and decision in that case. For the reasons stated in the *Biestek* case, we uphold the dismissal of Mr. Biscailuz's complaint on jurisdictional grounds.[2]

### B

We next turn to the claims of the other 18 appellants in this case. The principal argument raised in their brief is that section 3121(v)(2) is unconstitutional because it imposes a tax on a right to income to be received in the future, rather than income actually received. Appellants' Br. 7–10.[3]

---

[2] Diana Raymond, a second plaintiff who was originally listed as a member of the *Beavis* group, has also been associated with the *Biestek* case for purposes of appeal.

[3] As in the *Biestek* case, many of the appellants listed in the caption of Mr. Beavis's brief did not file separate notices of appeal; instead, as noted by the gov-

The appellants' constitutional challenge to section 3121(v)(2) rests on two propositions, both of which are wrong. First, they contend that the FICA tax is an income tax, and that the Sixteenth Amendment to the Constitution prohibits imposing taxes on income that has not been realized. Second, they contend that the Supreme Court's decision in *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955), defines "income" for all taxation purposes to mean "instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Appellants' Br. 7.

To begin with, it is well established that the FICA tax on wages is not an income tax, but an excise tax. *See United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 240 (2002); *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 204 (2001); *Xianli Zhang v. United States*, 640 F.3d 1358, 1366–67 (Fed. Cir. 2011). Any constitutional limitations imposed by the Sixteenth Amendment are inapplicable to excise taxes, as the Sixteenth Amendment applies only to income taxes, not to excise taxes, which are separately authorized in Article I, Section 8, Clause 1 of the Constitution.

The definition of "income" in 26 U.S.C. § 22(a) (1939) (now 26 U.S.C. § 61(a)), which was at issue in the *Glenshaw Glass* case, is confined to income for purposes of the

---

ernment (Appellee's Br. 12), timely notices of intention to appeal were filed only by appellants Beavis and Biscailuz. Because Mr. Beavis was proceeding pro se, he was not authorized to represent others, *see Baude v. United States*, 955 F.3d 1290, 1305–06 (Fed. Cir. 2020), so his notice of appeal did not grant party status to any of the other would-be appellants. As in *Biestek*, however, the failure of most of the would-be appellants to perfect their appeals does not prevent this court from addressing all the issues raised in the brief filed on their behalf.

imposition of income taxes. *See Glenshaw Glass*, 348 U.S. at 429–30. Nothing in *Glenshaw Glass* suggests that Congress is prohibited from modifying the definition of income or wages in particular ways, especially with respect to taxes other than income taxes. That is what Congress did in section 3121(v)(2), where it allowed an excise tax to be imposed on deferred wages promised to the recipient, but not yet received. There is no constitutional authority suggesting that defining wages in that fashion, for the specific purpose set forth in section 3121(v)(2), is beyond Congress's authority.

C

The appellants make several other arguments that can be disposed of summarily. First, they argue that the statute establishing the FICA tax designates it as being "collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid." Appellants' Br. 8 (quoting 26 U.S.C. § 3102). Because the tax in this case was not collected "as and when [the employees' wages were] paid," the appellants contend that it could not lawfully be collected in the manner that it was, that is, before the wages were paid. The short answer to that contention is that the special timing rule of 26 U.S.C. § 3121(v)(2) creates a statutory exception to the general rule of 26 U.S.C. § 3102, something that Congress is entitled to do and clearly did.

Moreover, section 3121(a) of the Internal Revenue Code defines "wages" to mean "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash" with certain exceptions. 26 U.S.C. § 3121(a). Retirement benefits undoubtedly qualify under that definition as "wages." The only question is whether those benefits can lawfully be defined to include the present value of promised wages to be paid in the future. Such a promised benefit clearly has present value, and we discern no

constitutional or other impediment to Congress's decision to tax the value of that benefit before the funds are actually paid.

The appellants next contend (Appellants' Br. 9–10) that some of the retired United pilots were granted refunds. The government responds that if any such refunds were granted based on the arguments the appellants are making, those refunds were granted in error. Appellee's Br. 24. In any event, the fact that the government may have granted some refunds does not mean that it forfeited its right to enforce the governing statutes against other claimants. *See Dickman v. Comm'r*, 465 U.S. 330, 343 (1984).

Finally, the appellants argue that the IRS was required by the Administrative Procedure Act to "exhaust its administrative remedies within the Agency before it can sue to recover any other taxes on income received afterward, and the Circuit lacks jurisdiction to award [refunds] until administrative remedies are exhausted and a lawsuit comes before them." Appellants' Br. 12. Any requirement to exhaust administrative remedies applies to parties seeking relief from a government agency, not the other way around. And this case does not involve an action brought by the government; the action for a refund was brought by the appellants. The government was not subject to any exhaustion requirement in this case, under the Administrative Procedure Act or otherwise.

No costs.

**AFFIRMED**